UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN MATTER OF ) | |
| ) | |
| THE EXTRADITION OF ) | Case No. 1:17-MJ-04218-DHH |
| ) | |
| CRISTIAN STARLING AGUASVIVAS ) | |

## MEMORANDUM OF EXTRADITION LAW
## AND REQUEST FOR DETENTION PENDING EXTRADITION PROCEEDINGS

The United States, in fulfilling its treaty obligations to the Dominican Republic, respectfully requests that the fugitive in this case, Cristian Starling Aguasvivas ("Aguasvivas"), be held without bond pending the hearing on the certification of his extraditability pursuant to 18 U.S.C. §§ 3181 *et seq*. This memorandum summarizes the framework of extradition law in the United States, and sets forth the reasons why Aguasvivas should be detained. In short, Aguasvivas should be detained because he cannot overcome the strong presumption against bail in international extradition cases. Specifically, he cannot meet his burden of showing that special circumstances exist warranting his release, and that he poses no risk of flight or danger to the community.

### BACKGROUND

On December 6, 2013, Dominican Republic anti-drug agents executed an operation in Bani. During the operation, the agents were arresting Aguasvivas, a/k/a "Momon," a suspected illegal drug dealer, when they were approached by his brother, Frank Aguasvivas ("Frank"). Frank began to question the agents about, and protest, Aguasvivas' arrest.

Aguasvivas took advantage of this distraction and attacked Agent Lorenzo Ubri Montero ("Agent Ubri"). Aguasvivas managed to disarm Agent Ubri and then shot him three times. Next, Aguasvivas opened fire on the other agents, hitting and seriously wounding Captain Felipe de Jesus Jimenez Garcia ("Captain Jimenez") and Agent Jose Marino Henriquez Rodriguez ("Agent Henriquez").

Agent Ubri suffered a fatal bullet wound to the chest and died. A subsequent autopsy established that his cause of death was by gunshot wounds. Captain Jimenez survived but suffered bullet wounds to the neck, abdomen, arm, and thorax. Agent Henriquez also survived but suffered bullet wounds to his abdomen and liver. Both Captain Jimenez and Agent Henriquez identified Aguasvivas, by reference to his photograph, as the man who shot them and who disarmed, shot, and killed Agent Ubri.

The Dominican Republic seeks the extradition of Aguasvivas to stand trial on charges of murder, aggravated robbery, conspiracy, and illegal firearm possession, in violation of Articles 265, 266, 295, 304, 379, and 383 of the Dominican Criminal Code, and Article 39, Paragraph III, of Dominican Law 36 on Trade and Possession of Firearms. A warrant for Aguasvivas' arrest was issued on December 9, 2013, by an Acting Judge of the Judicial Office of Permanent Attention Services of the Judicial District of Peravia, at Baní, Dominican Republic.

The Dominican Republic has requested that Aguasvivas be extradited pursuant to its extradition treaty with the United States, the Extradition Treaty between the Government of the United States of America and the Government of the Dominican Republic, Jan. 12, 2015, T.I.A.S. 16-1215 (referenced hereinafter as "the Treaty"). The United States, in accordance with its obligations under the Treaty and pursuant to 18 U.S.C. §§ 3181 *et seq.*, filed a complaint in

this District seeking a warrant for Aguasvivas' arrest. This Court issued the arrest warrant on September 13, 2017, and Aguasvivas was arrested on September 14, 2017. Aguasvivas is currently in the custody of the U.S. Marshals Service.

## ARGUMENT

### I.   LEGAL FRAMEWORK OF EXTRADITION PROCEEDINGS

#### A.   The limited role of the Court in extradition proceedings

The extradition process is *sui generis*. Extradition is primarily an executive function with a specially defined role for the Court. *See Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006). The court is authorized by statute to hold a hearing at which it determines whether to certify to the Secretary of State that the evidence provided by the requesting country is "sufficient to sustain the charge." 18 U.S.C. § 3184. The Secretary of State, and not the Court, then decides whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Hilton v. Kerry*, 754 F.3d 79, 84 (1st Cir. 2014). "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

At the extradition hearing, the Court's role is limited to considering the requesting country's evidence and determining whether the legal requirements for certification of extraditability—as defined in the applicable extradition treaty, statutes, and case law—have been established. *See Sidali*, 107 F.3d at 194-95 (citing *Charlton v. Kelly*, 229 U.S. 447, 461 (1913)) (analogizing extradition hearing to a preliminary hearing in a criminal case). If the Court finds

3

that the requirements for certification have been met, it must provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the U.S. Marshal to await the Secretary's final determination regarding surrender.  18 U.S.C. § 3184 (following certification, the extradition judge "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made").

### B. The requirements for certification

The Court should certify to the Secretary of State that a fugitive is extraditable when the following requirements have been met: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the Court has jurisdiction over the fugitive; (3) the applicable extradition treaty is in full force and effect; (4) the crime for which surrender is requested is covered by the treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge.  *See, e.g.*, *Hoxha*, 465 F.3d at 560; *Manta v. Chertoff*, 518 F.3d 1134, 1140 (9th Cir. 2008).  The following sections briefly discuss each of those requirements.

#### 1. Authority over the proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  As such, the judicial officer conducting the extradition hearing prescribed by Section 3184 does not exercise "any part of the judicial power of the United States," *In re Extradition of Kirby*, 106 F.3d 855, 866 (9th Cir. 1996), but rather is acting in a "non-institutional capacity by virtue of a special authority," *In re Extradition of Howard*, 996 F.2d 1320, 1325 (1st Cir. 1993) (internal

4

quotations omitted). Both magistrate judges and district judges may render a certification under Section 3184. *See Austin v. Healey*, 5 F.3d 598, 601-02 (2d Cir. 1993); Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, Rule 1(e) ("Each Magistrate Judge appointed by this court is authorized to . . . [c]onduct extradition proceedings, in accordance with 18 U.S.C. Section 3184[.]").

        2.      <u>Jurisdiction over the fugitive</u>

The Court has jurisdiction over a fugitive, such as Aguasvivas, who is found within its jurisdictional boundaries. 18 U.S.C. § 3184 ("[A judge] may, upon complaint made under oath, charging any person found within his jurisdiction . . . issue his warrant for the apprehension of the person so charged.").

        3.      <u>Treaty in full force and effect</u>

Section 3184 provides for extradition in specifically defined situations, including whenever a treaty or convention for extradition is in force between the United States and the requesting state. *Id.*; *see also Hoxha*, 465 F.3d at 562. The government will satisfy this requirement at the extradition hearing by relying on the declaration of an attorney in the Office of the Legal Adviser for the U.S. Department of State, attesting that there is a treaty in full force and effect between the United States and the Dominican Republic. (See, Extradition Complaint, Exhibit 1). The Court must defer to the Department of State's determination in that regard. *See Kastnerova v. United States,* 365 F.3d 980, 986 (11th Cir. 2004); *United States ex rel Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Sabatier v. Dabrowski*, 586 F.2d 866, 868 (1st Cir. 1978).

5

      4.      <u>Crimes covered by the treaty</u>

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty. Article I of the Treaty in this case provides for the return of fugitives charged with, or found guilty of, an "extraditable offense." Article II of the Treaty defines offenses as extraditable if the criminal conduct is punishable under the laws of both the United States and the Dominican Republic by deprivation of liberty of more than one year, or by a more severe penalty. In assessing whether the crime for which extradition is requested is covered by the Treaty, the Court should examine the description of criminal conduct provided by the Dominican Republic in support of its charge and decide whether that conduct, if it had been committed here, would be criminal under U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *See Wright v. Henkel*, 190 U.S. 40, 61 (1903); *In re Extradition of Manzi*, 888 F.2d 204, 207 (1st Cir. 1989).

A requesting country need not establish that its crimes are identical to ours. *See United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995) ("The principle of dual criminality does not demand that the laws of the surrendering and requesting states be carbon copies of one another."). Indeed, "[t]he law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions." *Collins v. Loisel*, 259 U.S. 309, 312 (1922).

In fulfilling its function under Section 3184, the Court should liberally construe the applicable extradition treaty in order to effectuate its purpose, namely, the surrender of fugitives to the requesting country. *Factor v. Laubenheimer*, 290 U.S. 276, 298-300 (1933); *see also, e.g.*,

*Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (en banc) ("default rule" is that any ambiguity in extradition treaty must be construed in favor of "facilitat[ing] extradition."). Accordingly, because extradition treaties should be "interpreted with a view to fulfil our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the Court should "approach challenges to extradition with a view towards finding the offenses within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981).

Here, Aguasvivas is charged with murder, aggravated robbery, conspiracy, and illegal firearm possession, in violation of Articles 265, 266, 295, 304, 379, and 383 of the Dominican Criminal Code, and Article 39, Paragraph III, of Dominican Law 36 on Trade and Possession of Firearms. All four crimes are punishable in state and federal court by imprisonment for more than one year. Accordingly, there can be no reasonable dispute that the alleged offenses are covered by the treaty.

        5.        <u>Probable cause that the fugitive has committed the offense</u>

To certify the evidence to the Secretary of State, the Court must conclude there is probable cause to believe that the crime charged by the Dominican Republic was committed by Aguasvivas. *Sidali*, 107 F.3d at 195. The evidence is sufficient, and probable cause is established, if it would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975); *Hoxha*, 465 F.3d at 561 ("The probable cause standard applicable to an extradition hearing is the same as the standard used in federal preliminary hearings."). "Thus, the magistrate's role is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction." *Id.* (internal quotation

marks omitted). Indeed, the extradition judge's probable cause determination is "not a finding of fact 'in the sense that the court has weighed the evidence and resolved disputed factual issues,'" but instead "'serve[s] only the narrow function of indicating those items of submitted evidence on which the decision to certify extradition is based.'" *Quinn v. Robinson*, 783 F.2d 776, 791 (9th Cir. 1986) (quoting *Caplan v. Vokes*, 649 F.2d 1336, 1342 n.10 (9th Cir. 1981)).

### C. An extradition hearing follows unique procedures

As detailed above, the purpose of an extradition hearing is to decide the sufficiency of the charge for which extradition is requested under the applicable extradition treaty; it is not to determine the guilt or innocence of the fugitive—that determination is reserved for the foreign court. *Collins*, 259 U.S. at 316; *Neely v. Henkel*, 180 U.S. 109, 123 (1901). Accordingly, an extradition hearing is not a criminal proceeding, *see, e.g.*, *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984); *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016); and it is governed by "the general extradition law of the United States and the provisions of the Treaty," *Emami v. U.S. Dist. Ct.*, 834 F.2d 1444, 1450-51 (9th Cir. 1987) (footnote omitted).

The Federal Rules of Evidence do not apply to extradition proceedings. *See, e.g.*, *In re Extradition of Bolanos*, 594 F. Supp. 2d 515, 519 (D.N.J. 2009); *see also* Fed. R. Evid. 1101(d)(3) ("These rules—except for those on privilege—do not apply to . . . miscellaneous proceedings such as extradition or rendition."). Indeed, hearsay evidence is admissible at an extradition hearing, and moreover, a certification of extraditability is properly based entirely on the authenticated documentary evidence and information provided by the requesting government. *See, e.g.*, *Hoxha*, 465 F.3d at 559, 561-62. Nothing more is required, and typically nothing more

is provided. *See, e.g.*, *Zanazanian v. United States*, 729 F.2d 624, 627-28 (9th Cir. 1984) (police report describing witness statements is competent evidence); *In re Extradition of Mainero*, 990 F. Supp. 1208, 1212-13, 1226-29 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition to Mexico). Extradition treaties do not require, or even anticipate, the testimony of live witnesses at the hearing. Indeed, requiring the "demanding government to send its citizens to another country to institute legal proceedings would defeat the whole object of the treaty." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *see also, e.g.*, *Zanazanian*, 729 F.2d at 626-27.

The Federal Rules of Criminal Procedure also do not apply to extradition proceedings. *See, e.g.*, *Bolanos*, 594 F. Supp. 2d at 519; *see also* Fed. R. Crim. P. 1(a)(5)(A) ("Proceedings not governed by these rules include . . . the extradition and rendition of a fugitive."). A fugitive has no right to discovery. *See Quinn*, 783 F.2d at 817, n.41; *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991) ("[I]n an extradition proceeding, discovery is not only discretionary with the court, it is narrow in scope."). Furthermore, many constitutional protections applicable in criminal cases do not apply. For example, there is no Sixth Amendment right to a speedy trial, *see, e.g.*, *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth Amendment guarantee against double jeopardy does not apply to successive extradition proceedings, *see, e.g.*, *In re Extradition of Powell*, 4 F. Supp. 2d 945, 951 (S.D. Cal. 1998) (citing *Collins*, 262 U.S. at 429); the exclusionary rule is not applicable, *see, e.g.*, *Simmons v. Braun*, 627 F.2d 635, 636-37 (2d Cir. 1980); and a fugitive does not have the right to confront his accusers, *see, e.g.*, *Bingham*, 241 U.S. at 517.

9

Relatedly, a fugitive's right to present evidence is severely constrained. A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but rather may only introduce evidence explaining the submitted evidence. *See Charlton v. Kelly*, 229 U.S. 447, 461-62 (1913). A contrary rule "might compel the demanding government to produce all its evidence . . . both direct and rebutting, in order to meet the defense thus gathered from every quarter." *Collins*, 259 U.S. at 316 (quoting *In re Extradition of Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)); *see also Hoxha*, 465 F.3d at 561. The admission of explanatory evidence is largely within the discretion of the Court. *See Hoxha*, 465 F.3d at 561 (quoting *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991)).

In addition, courts routinely reject technical and affirmative defenses in extradition proceedings. *See, e.g.*, *Bingham*, 241 U.S. at 517 (rejecting objections to extradition that "savor of technicality"); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (noting that extradition court "properly may exclude evidence of alibi, of facts contradicting the government's proof, or of a defense such as insanity"). These issues, which require factual or credibility determinations, are reserved for the courts in the requesting country to resolve after the fugitive is extradited.

### D. Rule of non-inquiry

All matters raised by the fugitive as a defense to extradition, other than those related to the requirements for certification, are to be considered by the Secretary of State, not by the Court. *See* 18 U.S.C. §§ 3184, 3186. For example, the Secretary of State should address a fugitive's contentions that an extradition request is politically motivated, that the requesting state's justice system is unfair, or that extradition should be denied on humanitarian grounds. *See, e.g.*, *Hoxha*, 465 F.3d at 563 ("Under the traditional doctrine of 'non-inquiry,' such

10

humanitarian considerations are within the purview of the executive branch and generally should not be addressed by the courts in deciding whether a petitioner is extraditable."); *Sidali,* 107 F.3d at 195 n. 7 ("[W]e note that it is the function of the Secretary of State—not the courts—to determine whether extradition should be denied on humanitarian grounds."); *Kin–Hong,* 110 F.3d at 110 ( "Under the rule of non-inquiry, courts refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country.") (internal quotation marks and citation omitted).

## II.     THE FUGITIVE SHOULD BE DETAINED

Just as extradition hearings follow unique procedures, the determination of whether to release a fugitive on bail is also *sui generis*. The federal statutes governing extradition in the United States, 18 U.S.C. §§ 3181 *et seq.*, do not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply because, as explained above, an extradition proceeding is not a criminal case.[1] *See Kamrin*, 725 F.2d at 1228; *Perez-Cueva*, 2016 WL 884877, at *3. Rather, case law provides that bail should be granted in an extradition proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

---

[1] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts.  *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).  Here, Aguasvivas is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with an offense committed in violation of the law of the requesting state, the Dominican Republic.

### A.     Applicable law

#### 1.     A strong presumption against bail governs in an international extradition proceeding

Unlike in domestic criminal cases, "[t]here is a presumption against bail in extradition cases and only 'special circumstances' justify release on bail." *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996). The Supreme Court established this presumption against bail in *Wright v. Henkel*, explaining that when a foreign government makes a proper request pursuant to a valid extradition treaty, the United States is obligated to deliver the person sought after he is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. 40, 62 (1903).

The prudential reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, a requesting country meets the conditions of the Treaty, the United States has an "overriding national interest in complying with treaty obligations" to deliver the fugitive. *Hababou*, 82 F. Supp. 2d at 352. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. "If the United States were to release a foreign fugitive pending extradition and the defendant absconded, the resulting diplomatic embarrassment would have an effect on foreign relations and

the ability of the United States to obtain extradition of its fugitives." *Id.* (quoting *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D. Cal.1990)).

>   2. Fugitives must be detained unless they establish "special circumstances" and also demonstrate that they are neither a flight risk nor a danger to the community

In light of the strong presumption against bail established in *Wright*, fugitives may not be released on bail unless they demonstrate that (1) "special circumstances" warrant their release and (2) they are neither a flight risk nor a danger to the community. *See, e.g.*, *In the Matter of the Extradition of Antonowicz*, 17-cv-00861, 2017 WL 1197855, at *1 (C.D. Cal. Mar. 27, 2017).[2] "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In the Matter of the Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996); *see also Hababou,* 82 F. Supp. 2d at 351 ("Special circumstances are limited to those situations in which the justification for release is pressing as well as plain.").

Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *See, e.g.*, *Hababou,* 82 F. Supp. 2d at 352 ("even assuming that petitioner is not a flight risk, that reason alone is insufficient to overcome the presumption

---

[2] Several courts have required fugitives to meet this burden with clear and convincing evidence, reasoning that the presumption against bail in extradition cases justifies a heightened standard of proof, *see, e.g.*, *In re Extradition of Patel*, 08-430–MJ–HUBEL, 2008 WL 941628, at *1 (D. Or. Apr. 4, 2008); *In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996); others have applied a preponderance of the evidence standard, *see, e.g.*, *Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n.4 (C.D. Cal. 2006). Other courts have found it unnecessary to resolve the issue because of the difficulty of satisfying either standard. *See, e.g.*, *Perez-Cueva*, 2016 WL 884877, at *2.

against bail."); *Leitner*, 784 F.2d at 161 ("Even a low risk of flight" is not a circumstance sufficiently "unique" to constitute a special circumstance).

"Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition." *Mainero*, 950 F. Supp. at 294 (citing *In re Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)). Courts have considered and rejected a lengthy list of would-be special circumstances, including:

- U.S. citizenship or the pendency of naturalization or other immigration proceedings, *see, e.g.*, *Antonowicz*, 2017 WL 1197855, at *3; *In re Extradition of Knotek*, No. 13-cv-9204, 2016 WL 4726537, at *7 (C.D. Cal. Sept. 8, 2016); *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

- The complexity of the pending litigation, *see, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996);

- The fugitive's need to consult with an attorney and/or participate in pending litigation, *see, e.g.*, *Smyth*, 976 F.2d at 1535-36;

- The fugitive's character, background, and/or ties to the community, *see, e.g.*, *Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994); *In re Extradition of Beresford-Redman*, No. 10-cr-2780, 753 F. Supp. 2d 1078, 1089 (C.D. Cal. 2010);

- Discomfort, special dietary needs, or medical concerns that can be attended to while incarcerated, *see, e.g.*, *In re the Extradition of Kyung Joon Kim*, 04-cv-3886, 2004 WL 5782517, at *5 (C.D. Cal. July 1, 2004);

- The fugitive's professional status, *see, e.g.*, *In re Extradition of Pelletier*, No. 09-mc-22416, 2009 WL 3837660, at *3-4 (S.D. Fla. Nov. 16, 2009) (allegedly well-respected businessman); *In re Extradition of Heilbronn*, 773 F. Supp. 1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor); and

- The availability of electronic monitoring, *see, e.g.*, *In re Extradition of Rovelli*, 977 F. Supp. 566, 569 (D. Conn. 1997).

While in certain exceptional cases some of the above may have been deemed a special circumstance, courts generally determine special circumstances to exist based on a confluence of factors, as opposed to any single consideration.

**B.     Analysis**

The Court should detain Arguasvivas without bond.  As a threshold matter, the government is unaware of any "special circumstances" that would justify bail in this case.  The lack of special circumstances is alone sufficient for the Court to deny any forthcoming application for bail.

Even if Aguasvivas could establish special circumstances, bail should still be denied because he cannot show that he is not a significant flight risk.  He has so far demonstrated an aptitude in fleeing across national borders and working with co-conspirators to avoid prosecution.  The fact that he has evaded prosecution in the Dominican Republic is indicative of his risk of flight in the United States.  *Cf. United States v. Botero*, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges.  The intent is the same—the avoidance of prosecution.") (citing *Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir. 1976)).

Further, Aguasvivas has a significant incentive to flee given that he faces a lengthy sentence of imprisonment for the murder offense (carrying a thirty-year sentence) and the other violent offenses he committed against police officers in the Dominican Republic.  *See, e.g.*, *Hababou,* 82 F. Supp. 2d at 352 (flight risk based, in part, on the seriousness of the charges); *see*

*also Perez-Cueva*, 2016 WL 884877, at *3 (seriousness of allegations against fugitive "militates against release on bail").  Allowance of bail in any amount would not guarantee Aguasvivas' presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.

Aguasvivas also cannot demonstrate that he poses no danger to the community.  He is a suspected drug-dealer who committed violent crimes, including murder, against Dominican Republic police officers who were attempting to arrest him.  His actions demonstrate a continued danger to the community.

Should, however, the Court be inclined to grant bail in this case, the government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances."  Moreover, in order to protect the ability of the United States to meet its treaty obligations to the Government of the Dominican Republic, the government also requests that the Court notify the parties within a reasonable amount of time in advance of any contemplated release order.

## III. CONCLUSION

For the foregoing reasons, the United States requests that Aguasvivas be detained pending resolution of this extradition proceeding.

<div style="margin-left: 50%;">

Respectfully submitted,

WILLIAM D. WEINREB
Acting United States Attorney

By:

*/s/ Theodore B. Heinrich*
Theodore B. Heinrich
Assistant United States Attorney

</div>

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

September 15, 2017

*/s/ Theodore B. Heinrich*
Theodore B. Heinrich
Assistant U.S. Attorney