```
 1                     UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3   UNITED STATES OF AMERICA,      :    MAGISTRATE ACTION
                                         No. 17-04218-DHH-1
 4        Plaintiff,                :

 5        v.                        :

 6   CRISTIAN STARLING AGUASVIVAS,  :

 7        Defendant.                :

 8   : : : : : : : : : : : : : : : : : : : : : : : : : : : : ::

 9
                 BEFORE THE HONORABLE DAVID H. HENNESSY,
10                   UNITED STATES MAGISTRATE JUDGE
                            STATUS CONFERENCE
11
     APPEARANCES:
12
     For the United States          U. S. Attorney's Office
13   of America:                    BY:  THEODORE B. HEINRICH, AUSA
                                    1 Courthouse Way, Suite 9200
14                                  Boston, MA   02210

15   For the Defendant:             Federal Public Defender Office
                                    BY:  JENNIFER C. PUCCI, AFPD
16                                       OSCAR CRUZ, JR., AFPD
                                    51 Sleeper Street, 5th Floor
17                                  Boston, MA   02210

18
                                    U. S. District Court
19                                  595 Main Street
                                    Worcester, Massachusetts   01608
20                                  Monday, October 2, 2017
                                    11:46 a.m.
21
     Proceedings recorded by electronic sound recording; transcript
22   produced by transcription service.

23                      JANICE RUSSELL TRANSCRIPTS
                             1418 Red Fox Circle
24                          Severance, CO   80550
                                (757) 422-9089
25                          trussell31@tdsmail.com
```

1 <u>P R O C E E D I N G S</u>

2 THE COURTROOM DEPUTY:  The United States District
3 Court is now in session, the Honorable David H. Hennessy
4 presiding.  Today's date is October 2, 2017, in the case of the
5 United States versus Cristian Aguasvivas, Criminal Action No.
6 17-4218.
7 Counsel, please identify yourselves for the record.
8 MR. HEINRICH:  Morning, your Honor.  Ted Heinrich for
9 the Government.
10 THE COURT:  Good morning.
11 MS. PUCCI:  Good morning, your Honor.  Jennifer Pucci
12 for Mr. Aguasvivas.
13 MR. CRUZ:  And, your Honor, Oscar Cruz for
14 Mr. Aguasvivas.  I'll be filing an appearance today.
15 THE COURT:  Good morning.
16 Okay.  This is, actually, just a status conference on
17 the matter.  It's been reported to me that Mr. Aguasvivas
18 intends to challenge extradition, is that correct?
19 MS. PUCCI:  That's correct, your Honor.
20 THE COURT:  All right.  And I'll schedule a hearing.
21 Do, do you know what basis or bases you're going to raise for
22 challenging?
23 MS. PUCCI:  I, I do, your Honor.  And I guess what we
24 were going to ask for, to the extent this is --
25 THE COURT:  Sure.

1         MS. PUCCI:  - okay with the Court, is that you set a
2    status about four to six weeks out.
3         THE COURT:  Okay.
4         MS. PUCCI:  And the reason for that is there are a
5    couple of complicated factual legal issues in this case that
6    I'm happy to kind of give a preview of to the Court.
7         THE COURT:  All right.
8         MS. PUCCI:  In terms of your first question, what do
9    we intend to challenge.  There are the four prongs that we can
10   challenge in that initial hearing in front of your Honor and we
11   intend to challenge the probable cause piece of this.  I don't
12   think we have grounds, at least as far as I see at this point,
13   to act on the other three prongs.
14        But this case has a couple of complications and, quite
15   frankly, I just want the time to figure out what, if anything,
16   we can do with this and what investigation we might need to
17   conduct.
18        THE COURT:  Okay.
19        MS. PUCCI:  The incident happened back in 2013 in the
20   Dominican Republic and Mr. Aguasvivas would agree he was there,
21   but I think disagree with many of the other allegations that
22   are contained in the documents from Mr. Heinrich.  He was
23   present and he, his position was he was taken into custody or
24   taken captive by these four men who turned out to be police
25   officers of the Dominican Drug Service.  They handcuffed him.

1  He's not sure why he was arrested, but his brother and uncle
2  came to the scene.  There was a shooting and, you know, there
3  was an officer killed, another officer injured.
4          So that incident happened, but his position is he was
5  not responsible or engaged in any of those shootings.  He fled
6  the Dominican Republic and came to the United States about
7  eight months later and has, had spent about two years in
8  Immigration Court proceedings while detained in the United
9  States.  He claimed political asylum, withholding of removal,
10 and relief under the Convention Against Torture and actually
11 was granted -- the first two were denied, but he was granted
12 withholding of removal under the Convention Against Torture
13 last year -- I think it was August 2016 -- on the grounds that
14 it was more likely than not he would be tortured by these
15 Dominican Services, Drug, the equivalent of the DEA down there
16 if he were to return.
17         There are voluminous transcripts from both the
18 Immigration Judge and the Board of Immigration Appeals.  I
19 should say his claims were initially denied by the Immigration
20 Judge and then on appeal before the Board of Immigration
21 Appeals they reversed the finding on the Convention Against
22 Torture.
23         So, you know, we've just gotten this pretty voluminous
24 file.  There are numerous witnesses.  I believe some are
25 percipient witnesses, some are family members who testified

1  that they had been tortured in the wake of this incident over

2  where my client was at the time and that's kind of the basis

3  for the torture finding.

4  So the kind of short story of all this is we feel we

5  have a lot of fact finding to do.  We have a lot of legal

6  research to do.  I'm not sure how, if at all, this torture

7  withholding finding would affect this proceeding or, perhaps,

8  other avenues we might have to challenge the extradition, but

9  we'd like to figure that out.

10  THE COURT:  Okay.  That sounds fine.  I thought the

11  Court was going to be limited to the, the four issues so I

12  don't know to what extent parallel immigration proceedings or

13  removal proceedings may impact this.  But I'm happy to hear you

14  on it.

15  Mr. Heinrich, anything?

16  MR. HEINRICH:  No, your Honor.  I mean, there's going

17  to be a, I'm foreseeing, a potential issue about the scope of

18  the hearing and scope of the evidence on probable cause.  I'm

19  aware of the immigration finding and the previous determination

20  by the Immigration Board of Appeals.  I think the Government's

21  position will be that that, that those matters, particularly

22  concerning the Convention Against Torture, are matters for

23  Mr. Aguasvivas to address with the Secretary of State --

24  THE COURT:  Right.

25  MR. HEINRICH:  -- when and if that time comes.

1           THE COURT:  If and when we get beyond the extradition.

2           MR. HEINRICH:  Correct.

3           THE COURT:  Okay.

4           So do y'all anticipate we're going to have witnesses

5    from the Dominican Republic here or appearing by video?  I

6    mean, how would the, how does the, would the PC play out?

7           MS. PUCCI:  I think we -- well --

8           Go ahead.

9           MR. HEINRICH:  Well, I mean, I think, before we get to

10   that point, I think that there are probably going to be a

11   number of legal challenges to address before the Court would,

12   would entertain witnesses.  I mean, the, the Government, I

13   think, has already cited some case law, but we can certainly

14   address the issue further concerning what Mr. Aguasvivas'

15   rights are to present evidence at this hearing and whether or

16   not, you know, to what extent the, the determination is based

17   on the four corners of the submission --

18          THE COURT:  Right.

19          MR. HEINRICH:  -- by the Government.

20          THE COURT:  Right.

21          MS. PUCCI:  I think that's fair.  I mean, we've just

22   started researching this and it's a very unique area of law.

23          THE COURT:  Right.

24          MS. PUCCI:  It's not criminal.  It's not civil.  It

25   seems to have its own jurisprudence and there seems to be some,

1  some guidance, but also not totally clear guidance about those
2  issues --
3              THE COURT:  Right.
4              MS. PUCCI:  -- the procedure from the Court and we may
5  end up having a number of disputes about that.  And we intend
6  to investigate what happened and certainly review who's
7  testified in front of the Immigration Court and then, perhaps,
8  ask your Honor to hear evidence if --
9              THE COURT:  Okay.
10             MS. PUCCI:  -- we feel it's appropriate and we can do
11 that.
12             THE COURT:  Okay.  And my recollection is -- and I
13 haven't looked at the papers in two weeks or so since we first
14 got together on the case -- but there were agents of the, of
15 this agency that's like the DEA in the Dominican Republic and
16 their testimony or sworn statements identify the,
17 Mr. Aguasvivas as the shooter.  That's my recollection of where
18 things were.
19             MS. PUCCI:  I think it says that two agents identified
20 him --
21             THE COURT:  Right.
22             MS. PUCCI:  -- in the papers.
23             THE COURT:  Okay.  All right.
24             So four to six weeks puts us -- so you want to get
25 together before Thanksgiving, is that --

```
 1            MS. PUCCI:  That would be fine, your Honor.
 2            THE COURT:  Okay.
 3            So we'll be in Worcester unless --
 4            MS. Belpedio, I think I'm here November 7th for, and
 5   November 9th.
 6            And if you, if you want to get together in Boston --
 7   and again, it'll be just for a status conference -- but, you
 8   know, if there's more to talk about, I'll certainly hear you on
 9   it.  I can do either of those dates in Boston.  Oh, and I'm
10   actually in on the 16th as well.
11            MS. PUCCI:  Any of those --
12            THE COURT:  7, 9, and 16 of November, if those work
13   for you.
14            MS. PUCCI:  Those are all fine, your Honor, for --
15            THE COURT:  Okay.
16            MS. PUCCI:  -- both of us.
17            THE COURT:  Mr. Heinrich, any preferences?
18            MR. HEINRICH:  Those are fine, your Honor.
19            THE COURT:  Okay.  Why don't we meet on the 9th,
20   November 9th, at 2:00.
21       (Court confers with staff)
22            THE COURT:  So November 9th at 2:00 for a further
23   status conference.  And if you want the defendant produced,
24   just let Ms. Belpedio know a week in advance and we'll have him
25   produced.
```

```
 1          MS. PUCCI:  Thank you, your Honor.
 2          THE COURT:  All right?
 3          MR. CRUZ:  Thank you, your Honor.
 4          THE COURT:  Okay.
 5          We're in recess.  Thank you.
 6          MS. PUCCI:  Thank you.
 7      (Proceedings concluded at 11:55 a.m.)
 8
 9
10                          CERTIFICATE
11       I, court approved transcriber, certify that the
12  foregoing is a correct transcript from the official electronic
13  sound recording of the proceedings in the above-entitled
14  matter.
15  /s/ Janice Russell                  November 8, 2017
16  Janice Russell, Transcriber              Date
17
18
19
20
21
22
23
24
25
```